**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                                 :

| | |
|---|---|
| MOSSACK FONSECA & CO., S.A., | : |
| BUFETE MF & CO., JURGEN | : |
| MOSSACK and RAMON FONSECA | : |
| | : |
| Plaintiffs, | :      CIVIL ACTION NO. 3:19-cv-01618 |
| | : |
| v. | : |
| | : |
| NETFLIX INC. | : |
| | : |
| Defendant. | : |

_____:       OCTOBER 16, 2019

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NETFLIX INC.'S**
**MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER VENUE**

In its motion to dismiss, Defendant Netflix, Inc. ("Netflix") seeks dismissal of Plaintiffs' Complaint because Plaintiffs do not meet the requirements of the Connecticut long-arm statute, Conn. Gen. Stat. § 33-929(f), or the requirements of Constitutional due process, *both* of which are necessary prerequisites to this Court exercising personal jurisdiction over Netflix.   In response, Plaintiffs, relying on *Talenti v. Morgan & Brother Manhattan Storage Co.*, argue that the long-arm statute is inapplicable and that by registering in Connecticut as a foreign corporation, Netflix has consented to the jurisdiction of the Connecticut.  113 Conn. App. 845 (Conn. Ct. App. 2009).

However, Plaintiffs, either negligently or deliberately, have failed to cite to the controlling Second Circuit precedent of *Brown v. Lockheed Martin Corp.*, which explicitly rejected *Talenti*, and held that a foreign corporation's registration and appointment of an agent for service of process under the Connecticut statute does not result in that corporation's "submit[ting] to the general jurisdiction of Connecticut courts."  814 F.3d 619, 634 (2d Cir. 2016).

*Brown v. Lockheed Martin Corp.* is binding precedent in this District, and only further reinforces the merits of Netflix's motion to dismiss for lack of personal jurisdiction based on Plaintiffs' inability to meet the requirements of the Connecticut long-arm statute.   Although Plaintiffs have just amended their Complaint to add additional allegations regarding Netflix's purported connections to Connecticut, the Amended Complaint remains devoid of any allegations that Plaintiffs reside in or have a usual place of business in Connecticut, and Plaintiffs thus remain unable to satisfy the requirements of the Connecticut long-arm statute.[1]  The Amended Complaint should be dismissed pursuant to Federal Rule 12(b)(2) and 12(b)(3).[2]

---

[1] In light of the Court's order setting an expedited briefing schedule (Dkt. 17), Netflix respectfully requests that the Court deem Netflix's pending motion to dismiss (Dkt. 9) to be directed to the allegations of Plaintiffs' Amended Complaint (Dkt. 22).

[2] Further, although Plaintiffs' original Complaint contained verified allegations, Plaintiffs Amended Complaint is not verified.  (*Compare* Dkt. 1 *with* Dkt. 22).  The Amended Complaint supersedes the original Complaint, and the unverified Amended Complaint is ineffective for the purpose of supporting Plaintiffs' motion for a temporary restraining order.  "Unsupported assertions cannot serve as a basis for injunctive relief."  *PA Realty Group, LLC v.*

Further, the additional allegations in Plaintiffs' Amended Complaint do not alter the analysis of whether Netflix has minimum contacts with Connecticut or that exercise of personal jurisdiction over Netflix would be reasonable. Finally, Plaintiffs' Lanham Act claims, which are insufficient as a matter of law, provide no basis for jurisdiction or venue in this District.[3]

## ARGUMENT

### I.    The Second Circuit Has Expressly Rejected *Talenti*

#### A.    *The* Talenti *Decision*

In *Talenti*, the out-of-state plaintiffs sued a New York corporation in Connecticut state court. 113 Conn. App. at 846. The trial court applied the Connecticut long-arm statute, Conn. Gen. Stat. 33-929(f), and determined that since the plaintiffs neither resided in Connecticut nor had a usual place of business in Connecticut, and the defendant was a foreign corporation, the court lacked personal jurisdiction. *Id.* at 849.

The Connecticut Court of Appeal reversed, holding that by obtaining a certificate of authority to do business in Connecticut and authorizing a registered agent to accept service of process in Connecticut, the foreign corporation had "consented to the exercise of jurisdiction over

---

*Hornbeck*, Case No. 3:16-CV-00630-VLB, 2016 WL 2944155, at *1 (D. Conn. May 20, 2016) (citing 13 Moore's Federal Practice § 65.23[1] (3d ed.) for proposition that allegations contained in an unverified complaint could not be considered in support of preliminary injunction).

[3] In addition to erroneously relying on *Talenti*, Plaintiffs' Opposition is larded with irrelevant points. The Opposition repeatedly refers to the existence of federal question jurisdiction (Plaintiffs' Opp. at 3-4), which pertains to *subject matter* jurisdiction rather than whether Defendant is subject to *personal* jurisdiction. Similarly, the Opposition discusses service of process, references Fed. R. Civ. P. 4(k)(1)(A), and argues that "Defendants [sic] agreed to accept service of documents in this case, and have been served with the documents filed by the Plaintiffs prior to appearances having been filed." (*Id.*) Plaintiffs seem to be confusing challenges to proper service under Rule 12(b)(5) with challenges to the exercise of personal jurisdiction under Rule 12(b)(2). Defendant's counsel's agreement to accept service of documents by email in no way constituted a waiver regarding personal jurisdiction. (Indeed, personal jurisdiction was never mentioned by either counsel. Defendant notes, however, that even though the service or acceptance of a summons does not waive objections to personal jurisdiction, Defendant's counsel has never been served (by email or otherwise) with the summons in this matter (Dkt. 15), despite having requested in writing that Plaintiffs serve it once it was issued.)

it by the courts of this state." *Id.* at 855 (citation omitted).[4]  In a footnote, the *Talenti* court noted,

in dicta, that this fictional consent to jurisdiction might obviate the need to undertake any analysis

of constitutional due process was satisfied.  *Id.* at 855 n. 14.  Although the Connecticut Supreme

Court denied *certiorari* for an appeal of *Talenti*, at least one federal district court has surmised that

"the Connecticut Supreme Court may have denied *certiorari* on the ground that the result of the

case was proper under the alternate or second prong [concerning service of the vice-president

within Connecticut under Conn. Gen. Stat. § 52-57(c)]."  *WorldCare Corp. Ltd. v. World Ins. Co.*,

767 F. Supp. 2d 341, 356 n.27 (D. Conn. 2011).[5]

     *B.*     *The* Brown v. Lockheed *Decision*

The *Talenti* holding regarding the consequence of a foreign corporation obtaining a

certificate of authority in Connecticut was put squarely before the Second Circuit in *Brown v.*

*Lockheed Martin*.  In that case, the mesothelioma plaintiff was neither a resident of Connecticut

nor had a usual place of business in Connecticut.  814 F.3d at 622.  The defendant Lockheed Martin

had a worldwide presence, but was incorporated in and had its principal place of business in

Maryland.[6]  *Id.*  Lockheed registered to do business in Connecticut, and maintained a registered

agent for service, pursuant to the same statutes addressed in *Talenti*.  *Id.*

The case was removed to federal district court from Connecticut state court.  The federal

district court, applying constitutional due process principles rather than the state long-arm,

dismissed the case for lack of personal jurisdiction.  On review, the Second Circuit directly

addressed the *Talenti* decision, and explicitly rejected it.  *Id.* at 636 ("We hazard that the Appellate

---

[4] The *Talenti* court did note that the defendant corporation maintained its principal place of business in Connecticut and that service of process was made upon the defendant corporation's vice president in Connecticut.  *Talenti*, 113 Conn. App. at 846.

[5] The *Talenti* decision has subsequently been criticized by state courts within Connecticut. *See Peeples v. State Farm Mut. Auto. Insur. Co.*, No. FSTCV186036595S, 2019 WL 4201550, at *7 (Conn. Super. Ct. Aug. 8, 2019).

[6] Further, from 2008 to 2012, Lockheed maintained offices in Connecticut and employed up to seventy workers there. *Brown*, 814 F.3d at 622.

Court erred in reading the registration and agent appointment statutes as constituting corporate consent to the exercise of general jurisdiction by the Connecticut state courts, and—more within this Court's ordinary domain—that it also erred in casually dismissing related federal due process concerns in a brief footnote.").

In particular, the Second Circuit found the *Talenti* decision raised grave federal due process concerns and would threaten to eviscerate the Supreme Court's holdings in *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011). *Brown,* 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler's* ruling would be robbed of meaning by a back-door thief.").

Conducting its own comprehensive analysis of relevant Supreme Court precedent, the Second Circuit distinguished between the limited effect of a foreign corporation registering an agent for **service of process** versus the broad effect of that foreign corporation effectively submitting to **general jurisdiction**:

> Section 33–929 nowhere expressly provides that foreign corporations that register to transact business in the state shall be subject to the "general jurisdiction" of the Connecticut courts or directs that Connecticut courts may exercise their power over registered corporations on any cause asserted by any person. Indeed, it appears to limit the ability of *out-of-state* plaintiffs to proceed against foreign corporations registered in Connecticut even with respect to certain listed matters bearing a connection to Connecticut. *See id.* § 33–929(f) (allowing suit only by residents of Connecticut and "person[s] having a usual place of business in this state").

> What it does provide is that the registered agent of a foreign corporation "is the [ ] agent for service of process, notice or demand *required or permitted by law to be served* on the foreign corporation." *Id.* § 33–929(a) (emphasis added). To our reading, this provision neither issues an open invitation nor expressly limits the matters as to which process may be served. Nor does it speak to the relationship between process so served and the state courts' jurisdiction.

4

*Brown*, 814 F.3d at 634.

      C.     *Under Controlling Precedent, Plaintiffs Fail to Satisfy Requirements for Personal Jurisdiction Over Netflix*

Plaintiffs' opposition to the motion to dismiss for lack of personal jurisdiction is entirely predicated on the erroneous argument, based on *Talenti*, that Plaintiffs are not subject to the requirements of Conn. Gen. Stat. § 33-929(f).  But upon proper application of *Brown v. Lockheed Martin*, it is apparent that Conn. Gen. Stat. § 33-929 must be satisfied for this Court to exercise jurisdiction over Netflix.  *Brown*, 814 F.3d at 633 ("Section 33–929, 'Service of process on foreign corporations,' is part of Connecticut's long-arm statute.")

Neither Plaintiffs' Opposition nor Plaintiffs' Amended Complaint allege that any of the Plaintiffs resides in Connecticut or has a usual place of business in Connecticut.  This fact alone compels the conclusion that personal jurisdiction may not be exercised over Netflix under the Connecticut long arm statute.  "Only if personal jurisdiction has attached under state law do we reach the constitutional question of whether due process is offended thereby." *Brown,* 814 F.3d at 631 (quoting *U.S. Trust Co. v. Bohart,* 197 Conn. 34, 39 (1985)).

## II.    Plaintiffs' Lanham Act Claims Are Legally Insufficient and Therefore Do Not Justify Jurisdiction Or Venue in This Court

To the extent that Plaintiffs attempt to justify either the exercise of personal jurisdiction or venue in this District based upon their Lanham Act claims, that argument should be rejected because those claims are insufficient as a matter of law.

Plaintiffs allege two causes of action under the Lanham Act: (1) "Trademark Infringement by Dilution" under 15 U.S.C. § 1125(c); and (2) "Federal False Advertising" under 15 U.S.C. § 1125.  As an initial matter, "Trademark Infringement by Dilution" is a non-existent hybrid of two separate causes of action, trademark infringement and trademark dilution.  15 U.S.C. § 1125(c),

under which Plaintiffs have pleaded their claim, governs trademark dilution. Both of Plaintiffs' Lanham Act claims are subject to dismissal under 12(b)(6) because they are insufficient as a matter of law.[7]

    A.    _All of Plaintiffs' Lanham Act Claims Are Subject to Dismissal Under the Rogers Rule_

As explained in detail in Defendant's Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Section II.F, Plaintiffs' Lanham Act claims should be dismissed as a matter of law under the _Rogers_ test. It is axiomatic that artistic expression such as Defendant's Film is constitutionally protected speech. _See Joseph Burstyn, Inc. v. Wilson_, 343 U.S. 495 (1952). The _Rogers_ test, derived from the seminal case of _Rogers v. Grimaldi_, 695 F. Supp. 112 (S.D.N.Y. 1988), _aff'd_, 875 F.2d 994 (2d Cir. 1989), is the established test used by courts to balance conflicting trademark rights and First Amendment protection for artistic works. Under _Rogers_ and its progeny, the First Amendment precludes Lanham Act claims premised upon the use of a trademark in an expressive work unless the use of the mark "has _no_ artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] _explicitly_ misleads as to the source or the content of the work." _Rogers_, 875 F.2d at 999 (emphasis added); _see Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc_., 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) ("The threshold for artistic relevance is purposely low and will be satisfied unless the use has _no_ artistic relevance to the underlying work _whatsoever_") (citations & quotations omitted) (emphasis in the original); _E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc_., 547 F.3d 1095, 1100 (9th Cir. 2008) (same).

---

[7] Even if Plaintiffs had pleaded trademark infringement, that claim, too, would be subject to dismissal under the _Rogers_ test, as described in Section A.

The *Rogers* test has been widely adopted and relied upon to dismiss trademark claims as a matter of law, including in granting Rule 12(b)(6) motions. *See, e.g., Louis Vuitton*, 868 F. Supp. 2d at 177 n.9 (granting motion to dismiss based on use of trademark in film); *Medina v. Dash Films, Inc.*, No. 15-CV-2551 (KBF), 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (granting motion to dismiss based on use of trademark in title of film); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) (granting summary judgment to defendant and applying *Rogers* test to claim for false advertising under the Lanham Act).

Here, the *Rogers* test bars Plaintiffs claims outright, as explained in Section II.F of Defendant's brief in opposition to Plaintiffs' Motion. Defendant more than meets the threshold for establishing artistic relevance. The Film employs Plaintiffs' names, and logo in the course of telling the fictionalized story of how these two lawyers found and exploited loopholes to help wealthy individuals and companies avoid taxation and other liabilities, largely through the creation of shell companies located offshore. Because these men and their companies, identified by the MOSSACK FONSECA logo, all feature in subject and story of the Film, their use is artistically relevant to the Film. *See E.S.S. Entertainment 2000 Inc.*, 547 F.3d at 1095, 1098, 1100 (finding that video game creator's use of "Pig Pen," a virtual, cartoon-style strip club similar in look at feel to trademark owner's Los Angeles strip club, was protected by the First Amendment from trademark and trade dress infringement claims; the court found artistic relevance because the creator sought to create a "cartoon-style parody of East Los Angeles," and "a reasonable way to do that is to recreate a critical mass of the businesses and buildings that constitute it"); *Dillinger, LLC v. Electronic Arts, Inc.*, No. 1:09-cv-1236-JMS-DKL, 2011 U.S. Dist. LEXIS 64006, at *14 (S.D. Ind. June 16, 2011) (finding the name "Dillinger" in reference to a Tommy Gun was artistically relevant to the defendants' The Godfather video game because "the gentleman-bandit,

commonly known for his public persona as a flashy gangster who dressed well, womanized, drove around in fast cars, and sprayed Tommy Guns, has above-zero relevance to a game whose premise enables players to act like members of the mafia and spray Tommy Guns.") (citation & quotations omitted).

For the same reasons, the Film does not explicitly mislead as to source or content. The Complaint and Amended Complaint are devoid of any allegation that the Film, or advertising for the Film, makes any claims about Plaintiffs' endorsement of or approval of the Film, or any role they played in creating it. Thus, the Film does not explicitly mislead as to the source or content of the work. Furthermore, as detailed in Section II.B.3.b of Defendants' opposition brief, *The Laundromat* repeatedly makes clear that it is not intended to be taken as factual representation. Moreover, the use of Plaintiffs' logo in the Film "is not, and the public would not interpret it to be, a source-denoter." *Medina*, 2016 WL 3906714, at *5. Consumers do not expect the trademark of a character in a fictionalized film to denote the Film's creator. Not to mention the fact that given the parodic nature and critical commentary contained in the Film, it is inconceivable that viewers would assume Plaintiffs endorsed or approved of the Film. Thus, Plaintiffs' Lanham Act claims will fail as a matter of law.

B.    *Plaintiffs' Dilution Claim Fails As a Matter of Law Because Plaintiffs' Film Is Not "Commercial Speech"*

Plaintiffs' dilution claim also fails as a matter of law because it falls within the "noncommercial use" exception to dilution claims under the Lanham Act. Under the statute, "[a]ny noncommercial use of a mark" is not actionable as trademark dilution. 15 U.S.C. § 1125(c)(3). Courts have granted motions to dismiss dilution claims based upon use of the plaintiff's mark in a film based upon this provision of the dilution law. *See Sporting Times, LLC v. Orion Pictures, Corp.*, 291 F. Supp. 3d 817, 826-27 (W.D. Ky 2017). As in *Sporting Times,*

*LLC*, "as the [Film] does more than merely propose a commercial transaction, and as . . . Defendants' use of the Mark is entitled to First Amendment protection, Plaintiffs' dilution claim is meritless and will be dismissed." *Id.*

## III.   Transfer to the Central District of California Under Section 1404 Is Appropriate

Even if the Complaint were not subject to dismissal pursuant Rule 12(b)(2), the action should still be transferred to C.D. Cal. pursuant to 28 U.S.C. § 1404(a).  Regarding Defendant's motion to dismiss or transfer venue, the Opposition notes that the action "could be re-filed in the event of dismissal," but asks that "if this Court decides not to continue hearing the matter, Plaintiffs would adopt the alternative relief requested by Defendant, and request consideration of a Transfer [sic] to California in the interests of justice."  (Opp. at 15-16.)

Plaintiffs' opposition to Defendant's alternative request for transfer to C.D. Cal. is thoroughly unpersuasive.  Plaintiffs assert that the Film has "caused negative association with [Plaintiffs' logo] in Connecticut" and that *unidentified* "Connecticut witnesses would testify in 'relation' to publication [sic] effect, scope and the types of association generated by Defendant's use of the Plaintiffs' logo . . . ."  Plaintiffs make similar arguments regarding their defamation claims. (Opp. at 11-12.)  The Netflix platform, however, will make the Film available for viewing in all fifty states and internationally, so Connecticut obviously has no greater connection to Plaintiffs' claims than any other state. However, the issue of actual malice – which Plaintiffs will have to establish for the reasons set forth in Defendant's opposition to Plaintiffs' motion for a preliminary injunction, considers a defendant's knowledge and state of mind.  The Netflix employees responsible for the marketing materials for the Film – of which Plaintiffs complain, and the screenwriter of the Film, are all based in Los Angeles.  Similarly, to the extent the visual content of the Film is a product of where it is filmed, California was the location for the overwhelming majority of principal photography.   (Dkt. 9-2, Chilton Decl. ¶ 2). Plaintiffs'

arguments regarding unidentified generic witnesses and amorphous connections to Connecticut should be rejected.

Finally, Plaintiffs' references to the existence of a Netflix office in New York and their suggestion that Netflix has not consented to jurisdiction in C.D. Cal. are specious. Netflix's headquarters and main office are in California and no employees in the New York office were involved with the Film. (Dkt. 9-2, Chilton Decl. ¶ 3). Moreover, by moving to transfer venue to C.D. Cal., Netflix has obviously consented to personal jurisdiction there.

## CONCLUSION

For the foregoing reasons, Netflix respectfully requests that the Court grant the motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, or in the alternative, transfer this action to the United States District Court for the Central District of California.

Respectfully submitted,

DEFENDANT NETFLIX, INC.

By: _//s// James J. Healy (ct28447)_
      James J. Healy (ct28447)
      Cowdery & Murphy, LLC
      280 Trumbull Street
      Hartford, CT 06103
      (860) 278-5555 Office
      (860) 249-0012 Facsimile
      jhealy@cowderymurphy.com

      Tom J. Ferber
      Ilene S. Farkas
      Felicity S. Kohn
      Michael B. Adelman
      Pryor Cashman LLP
      7 Times Square
      New York, NY 10036
      (212) 421-4100 Office
      (212) 326-0806 Facsimile
      tferber@pryorcashman.com
      ifarkas@pryorcashman.com
      fkohn@pryorcashman.com
      madelman@pryorcashman.com

      - Its Attorneys -

**CERTIFICATION**

I hereby certify a copy of the foregoing was filed electronically on October 17, 2019.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

By: //s// James J. Healy (ct28447)
James J. Healy