UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MOSSACK FONSECA & CO., S.A.; BUFETE MF & CO.; JÜRGEN MOSSACK; and RAMÓN FONSECA, *Plaintiffs*, <br><br> v. <br><br> NETFLIX, INC., *Defendant*. | Civil No. 3:19cv1618 (JBA) <br><br> October 17, 2019 |

## RULING GRANTING TRANSFER OF ACTION TO CENTRAL DISTRICT OF CALIFORNIA

In 2016, an anonymous whistleblower obtained millions of internal documents from the Mossack Fonseca business group and released them to the press. These documents contained information regarding Mossack Fonseca's provision of offshore financial services to clients around the globe, and they became known as the "Panama Papers." The Panama Papers data-dump provides the basis for *The Laundromat*, a Netflix original film set to debut on the production company's streaming platform on October 18, 2019.

Mossack Fonseca and its principals ("Plaintiffs") allege that *The Laundromat*'s depiction of their work in the offshore financial services industry libels principals Jürgen Mossack and Ramón Fonseca, invades Mossack and Fonseca's privacy by portraying them in a false light, and dilutes and falsely advertises the firm's trademarked logo in violation of the Lanham Act, 15 U.S.C. § 1125.

The threshold issue of Court's authority to hear Plaintiffs' claims is presented in Netflix's Motion to Dismiss [Doc. # 9] for lack of personal jurisdiction, on the grounds that Plaintiffs lack sufficient ties to Connecticut to avail themselves of this forum. In the alternative, Netflix requests

that the case be transferred to the District Court for the Central District of California, pursuant to 28 U.S.C. 1404(a).

The Court agrees that it lacks jurisdiction, and so transfers the case for the reasons that follow.

## I. Background

Plaintiffs Jürgen Mossack and Ramón Fonseca are licensed attorneys who reside in the Republic of Panama. (First Amended Compl. [Doc. # 22] ¶ 1.) Plaintiffs "were primarily in the business of forming and maintaining offshore companies," "commonly referred to as 'tax havens.'" (*Id.* ¶¶ 6-7.) To that end, Mossack and Fonseca owned and operated the law firm Bufete MF & Co. and the corporation Mossack Fonseca & Co., S.A. (*Id.* ¶¶ 2-3.) These business entities, which are also named as plaintiffs to this lawsuit, were organized under Panamanian law and headquartered in Panama City. (*Id.*)

Defendant Netflix, Inc., is a multimedia company that is headquartered in the State of California and incorporated in the State of Delaware. (*Id.* ¶¶ 4-5.) Netflix is also registered with the Connecticut Secretary of State as a foreign corporation[1] authorized to conduct business. (*Id.* ¶ 5.) Netflix is the distributor of the 2019 film *The Laundromat*, which portrays Plaintiffs as lead characters. (*Id.* ¶¶ 60-62.) Netflix also operates a streaming service that has millions of subscribers worldwide. (*Id.* ¶ 121.)

In 2016, an anonymous whistleblower provided 11.5 million Mossack Fonseca documents – the "Panama Papers" – to a German journalist. (*Id.* ¶ 28.) The International

---

[1] The Court "use[s] the phrase 'foreign corporation' to mean an organization incorporated under the laws of a state other than the forum state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626 (2d Cir. 2016) (citing Conn. Gen. Stat. § 33–602(15)).

Consortium of Investigative Journalists ("ICIJ"), assisted in reviewing these documents and produced stories "detail[ing] the connections between Government officials and offshore holdings, as well as others involved in illegal activities, utilizing entities alleged[ly]" created by Plaintiffs. (*Id.* ¶¶ 30-33.)

Following this initial coverage of the Panama Papers, a member of the ICIJ team, Jake Bernstein, published a book on the documents titled *Secrecy World*. (*Id.* ¶¶ 46-47.) In either 2017 or 2018, Bernstein sold the film rights to his book to Netflix. (*Id.* ¶ 61.) The Panama Papers film was produced under the name *The Laundromat* and advertised as being "based on some real shit." (*Id.* at 1.) The film stars Gary Oldman as Jürgen Mossack and Antonio Banderas as Ramón Fonseca, and "portrays the Plaintiffs as ruthless, uncaring and unethical lawyers involved in money laundering, tax evasion and/or other criminal activities that benefit wealthy people and/or dangerous criminals." (*Id.* ¶¶ 79-82.)

Netflix premiered *The Laundromat* at the Venice Film Festival on September 1, 2019 and screened it at the Toronto Film Festival on September 9, 2019. (Ex. 2 to Def.'s Opposition to Pls.' Motion for Temporary Restraining Order, Davin Declaration [Doc. # 20-2] ¶ 2.) The film was released in select theaters in New York and California on September 27, 2019. (*Id.*) Netflix intends to add *The Laundromat* to its streaming platform for consumption by its subscribers on October 18, 2019. (*Id.* at ¶ 3.)

On October 15, 2019, Plaintiffs filed a five-count complaint in the District Court for the District of Connecticut, alleging libel among other harms. (*See* Compl. [Doc. #1] at 1.) That same day, Plaintiffs applied for a temporary restraining order to prevent Netflix from streaming *The Laundromat* without a disclaimer that "Plaintiffs have never been convicted of money laundering, tax evasion or any financial crime" and to prohibit Netflix from including the

3

Mossack Fonseca & Co., S.A. logo in its movie. (Pls.' Application for Ex Parte Temporary Restraining Order [Doc. # 2] at 1.)

On October 16, 2019, Netflix filed an appearance and motion to dismiss, contending that it was not subject to the Court's personal jurisdiction over it in Connecticut. (Mem. in Support of Mot. to Dismiss [Doc. # 9-1] at 1). Netflix asked the Court to dismiss Plaintiffs' Complaint, or, in the alternative, transfer the case to a proper venue. (*Id.* at 1.) The Court then ordered an expedited briefing schedule in light of *The Laundromat*'s imminent release [Doc. # 17].

## II. Discussion

Defendant moves for dismissal "because Plaintiffs do not meet the requirements of the Connecticut long-arm statute, Conn. Gen. Stat. § 33-929(f), necessary for the Court to exercise personal jurisdiction over Netflix" and because the exercise of personal jurisdiction would not "comport with Constitutional due process requirements." (Def.'s Mem. in Support of Mot. to Dismiss, at 1.) Defendant also argues that dismissal is appropriate because Connecticut is an improper venue for this action. (*Id.* at 7.) In the alternative, Defendant seeks a transfer to the District Court for the Central District of California, "because the locus of operative facts concerning *The Laundromat* is in Los Angeles." (*Id.*) Plaintiffs oppose the motion, contending that Netflix has consented to the Court's jurisdiction by registering as a foreign corporation with the State of Connecticut. (Pls.'s Opp. to Mot. to Dismiss [Doc. # 23] at 2.) Notwithstanding their position on personal jurisdiction, Plaintiffs have offered their consent to a venue transfer as an alternative to dismissal if jurisdiction is found lacking in Connecticut. (*Id.* at 16.)

A court must grant a motion to dismiss if it lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden of "mak[ing] a prima facie showing that jurisdiction exists."

4

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). All allegations "are to be construed in the light most favorable to the plaintiff." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted).

To determine whether personal jurisdiction over a foreign defendant exists, a court "first look[s] to the long-arm statute of the forum state." *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37 (2d Cir. 2014) (internal citation and quotation marks omitted). Accordingly, the Court applies Connecticut's long-arm statute, which provides:

> Every foreign corporation shall be subject to suit in this state, *by a resident of this state* or *by a person having a usual place of business in this state*, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state . . .; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state . . .; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f) (emphases added). Construing this statute, state courts have concluded that this "explicit language . . . empowers only 'a resident of this state' or a 'person having a usual place of business in this state' to sue a foreign corporation in a Connecticut court." *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 555 (2014).

To satisfy the residency or "usual place of business" requirement of Conn. Gen. Stat. § 33-929(f), a plaintiff must do more than show it had a "brief and transient presence in Connecticut." *Nedgam Prods., LLC v. Bizparentz Found.*, No. 3:09-CV-500 CFD, 2010 WL 3257909, at *6 (D.

5

Conn. Apr. 29, 2010). That is because evidence that a plaintiff had only limited interactions with the state "would allow virtually any corporation present in the state on a temporary or provisional basis to claim that [its] 'usual place of business' is in this state." *Id.* Typically, courts "have found that a plaintiff's maintenance of a physical site in the state – an address, office, or retail store – where business is conducted is sufficient" to meet the terms of the Connecticut long-arm statute. *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*, No. 3:17-CV-00817 (CSH), 2018 WL 4039326, at *11 (D. Conn. Aug. 23, 2018).

Plaintiffs have not made the necessary showing here. To begin, none of the parties in this action are residents of Connecticut. All four of the named Plaintiffs reside in Panama. Plaintiffs make no allegations in their original or amended complaint that they have ever resided in Connecticut, maintained an office in Connecticut, conducted business in Connecticut, or even set foot in Connecticut. As such, Plaintiffs have not "satisfied their burden of alleging facts sufficient for the court to find that they have a usual place of business" or reside in Connecticut. *Matthews*, 149 Conn. App. at 560.

Despite acknowledging their own non-resident status, Plaintiffs nonetheless ask that the Court ignore Connecticut's long-arm statute and treat Defendant's registration with the State as a foreign corporation as demonstrating consent to jurisdiction. (Pls.'s Opp. to Mot. to Dismiss at 4.) To support their position, Plaintiffs cite *Talenti v. Morgan & Bro. Manhattan Storage Co.*, 113 Conn. App. 845 (2009), for the proposition that when a company files as a foreign corporation with the Connecticut Business Registry and "authoriz[es] a public official to accept service of process, [the company] has consented to the exercise of jurisdiction over it by the courts of this state." *Id.* at 854–55.

Plaintiffs' reliance on *Talenti* is misplaced, as the Second Circuit "hazard[ed] that the Appellate Court erred" in its interpretation of Connecticut law and concluded that *Talenti*'s "commentary is largely dicta; it does not reflect a detailed legislative analysis; it is not the decision of the state's highest court; and it does not seriously address any of the due process or other constitutional concerns that finding such a broad 'consent' implicit in registration and appointment might raise." *Id.* at 814 F.3d at 636, 637 n.19. The Second Circuit observed that the Connecticut business registration statute, Conn. Gen. Stat. § 33-926, lacks any "express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts." *Id.* at 636. It further explained that *Talenti*'s interpretation of the Connecticut long-arm statute would render "the restrictions imposed by § 33–929(f) on the class of plaintiffs entitled to avail themselves of the long-arm statute . . . meaningless, since for registered corporations the agent's mere availability to receive process would suffice." *Id.* at 636. Thus, the Second Circuit "construe[d] Connecticut's registration statute and appointment of agent provisions not to require registrant corporations that have appointed agents for service of process to submit to the general jurisdiction of Connecticut courts." *Id.* at 641.

Applying the Second Circuit's binding construction of the Connecticut long-arm statute in *Brown*, the Court concludes that Defendant's foreign corporation registration with the State of Connecticut is insufficient to establish personal jurisdiction.[2] Plaintiffs' other arguments are also

---

[2] A number of Connecticut trial courts have followed *Brown*. *See Peeples v. State Farm Mut. Auto. Insur. Co.*, No. FSTCV186036595S, 2019 WL 4201550, at *7 (Conn. Super. Ct. Aug. 8, 2019); *Prout v. Mukul Luxury Boutique Hotel & Spa*, No. CV156029341S, 2017 WL 1240047, at *3 (Conn. Super. Ct. Feb. 28, 2017); *Navedo v. State Farm Mut. Auto. Ins. Co.*, No. HHDCV156061609S, 2016 WL 1552874, at *3 (Conn. Super. Ct. Mar. 24, 2016). The Court notes

7

unavailing.[3] Because Plaintiffs have failed to allege any facts establishing that they reside or maintain a usual place of business in Connecticut, the Court concludes that it lacks personal jurisdiction over Defendant. As the Court has determined that personal jurisdiction is wanting here, it need not address Defendant's arguments regarding constitutional due process or improper venue.

Although the Court lacks jurisdiction over Plaintiffs' action, it nonetheless "may transfer the case if a transfer would be 'in the interest of justice.'" *Nedgam*, 2010 WL 3257909, at *7 (quoting *Corke v. Sameiet M.S. Song of Nor.*, 572 F.2d 77, 80 (2d Cir. 1978)); *see also SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 (2d Cir. 2000) ("[W]hether or not venue was proper, lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either [U.S.C. §] 1406(a) or [§] 1404(a)."). Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which

---

that none have adopted *Talenti*'s interpretation of Connecticut's long-arm statute since *Brown*'s issuance.

[3] For example, Plaintiffs argue that their trademark claim under the Lanham Act confers jurisdiction here, because their trademark is also protected under the Inter-American Convention for Trade Mark and Commercial Protection of 1929. Plaintiffs first concede that because the "Lanham Act, 15 U.S.C. § 1051, does not provide for national service of process . . . Connecticut law would determine the jurisdictional parameters." (Pls.' Opp. to Mot. to Dismiss, at 3.) But they reason that because the Inter-American Convention affords broader protection than the Lanham Act, that treaty confers the "right to enjoin Defendants from infringing anywhere in the United States and/or in the area of any Member State, and including a right to seek such a remedy in any court in the United States that has the authority to grant such relief." (Pls.' Opp. to Mot. to Dismiss, at 4.)

However, Plaintiffs cite no provision of the Inter-American Convention for this expansive proposition.

all parties have consented" when doing so is "in the interest of justice" and "[f]or the convenience of parties and witnesses."

Defendant has requested transfer to the District Court for the Central District of California, on the grounds that "C.D. Cal. is where the content and marketing of the Film were produced and where the Film's screenwriter resides" (Def.'s Mem. in Support of Mot. to Dismiss, at 10), and that "Netflix's headquarters and main office are in California," (Def.'s Reply to Pls.'s Opp. [Doc. # 24] at 11). Thus, Defendant is clearly subject to California's jurisdiction as Netflix produced the film in the State, is headquartered in the State, and has "obviously consented" to being sued by Plaintiffs there. (*Id.* at 11.) Plaintiffs have also conceded that "if this Court decides not to continue hearing the matter, Plaintiffs would adopt the alternative relief requested by Defendant, and request consideration of a Transfer to California in the interests of justice." (Pls.' Opp. to Mot. to Dismiss, at 16.)

Because this Court lacks jurisdiction over Plaintiffs' action and because all parties have consented to transfer to the District Court of the Central District of California, the Court concludes that such a transfer should be made pursuant to 28 U.S.C. § 1404(a).

### III. Conclusion

Accordingly, the Court GRANTS Defendant's Motion [Doc. # 9]. This action is therefore transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404. The clerk shall effect the transfer and close the file.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of October 2019.